UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| ANTHONY GARNER | ) | |
|---|---|---|
| (Social Security No. XXX-XX-9821), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:13-cv-146-SEB-WGH |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION ON
## APPROPRIATE DISPOSITION OF THE ACTION

This action is before me, William G. Hussmann, Jr., United States Magistrate Judge, pursuant to Judge Barker's order. (Filing No. 10.) Plaintiff Anthony Garner seeks judicial review of the Social Security Administration's final decision, which found that his disability had ended and terminated his entitlement to Disability Insurance Benefits under the Social Security Act. 42 U.S.C. § 301 *et seq.* The matter is fully briefed. (Filing No. 13; Filing No. 18; Filing No. 19.) Being duly advised, I find no error in the Administrative Law Judge's opinion and therefore recommend **AFFIRMING** his decision.

**I.      Background**

In their briefs, the parties thoroughly recounted the facts underlying the Commissioner's termination of Garner's benefits. I revisit them here only as necessary to address the parties' arguments on judicial review.

**A. Garner's Condition and Work History**

In February 2007, Garner was involved in a serious car accident and suffered a traumatic brain injury. (Filing No. 13 at ECF p. 1.) On June 25, 2007, the Social Security Administration found that Garner's cognitive losses constituted an organic mental disorder and approved his initial application for benefits. (Filing No. 8-3 at ECF p. 2 (citing 20 C.F.R. § 404, Subp't P, App. 1, Listing 12.02(A)–(B)).)

Before his injury, Garner worked full time for 17 years as the foreman of a sheet metal shop. (Filing No. 8-6 at ECF p. 7.) In that role, Garner completed administrative duties in addition to fabricating products. (*Id.*) In the summers of 2011 and 2012, Garner worked part time labeling pots at a greenhouse. (Filing No. 8-2 at ECF pp. 38–39, 44.) Garner is now 45 years old, and he completed a high school education and two years of college coursework before his accident. (*Id.* at ECF p. 38–39.)

**B. Procedural History and Jurisdiction**

In its continued review of Garner's condition, the Administration found that his disability (and, therefore, his eligibility for benefits) ceased on September 1, 2011. (Filing No. 8-3 at ECF p. 3.) Garner appealed, and a

Disability Hearing Officer found on reconsideration that his condition had improved, that he was able to work, and that his disability therefore had ceased. (Filing No. 8-4 at ECF p. 5.) An Administrative Law Judge ("ALJ") heard Garner's next appeal on June 18, 2012. (Filing No. 8-2 at ECF pp. 34–61.) A month later, the ALJ issued a written decision also finding that Garner's disability had ceased. (*Id.* at ECF pp. 14–27.) Finally, the Appeals Council denied Garner's request for review on July 26, 2013. This Court has jurisdiction to review the ALJ's decision as the Administration's final decision on the termination of Garner's benefits. 42 U.S.C. § 405(g); 20 C.F.R. §§ 404.955(a), 404.981.

### C. The Commissioner's Burden of Proof

Whereas a claimant must establish that he suffers from a disability before he can receive benefits, the Social Security Administration bears the burden of proving that the claimant's disability has ended before it can terminate benefits. An ALJ determining whether a claimant's disability has ended must undertake the eight-step inquiry set out at 20 C.F.R. § 404.1594(f). Garner's lone contention on judicial review concerns the ALJ's determination of his residual functional capacity (RFC) and his application of that RFC determination at Steps Seven and Eight, so I confine my report to those portions of his decision.

3

**D. The ALJ's Findings**

Garner takes issue with the ALJ's treatment of Dr. George Jewell's assessment of Garner's fine motor skills in his hands.[1] Dr. Jewell, a neurologist, examined Garner in January and February of 2011 at the request of two other doctors who treated Garner regularly. (*See* Filing No. 8-14 at ECF p. 9.) Dr. Jewell noted that Garner's "[f]ine motor speed and dexterity was moderately slow with the right hand on a grooved pegboard. Left hand performance on the pegboard, while extremely slow, had improved considerably from prior testing." (*Id.* at ECF pp. 11, 12.) Among Dr. Jewell's diagnostic impressions was that Garner experienced "[s]ignificant bilateral slowing of fine motor speed." (*Id.* at ECF p. 12.) Dr. Jewell suggested that Garner's job at the greenhouse was "well suited to his cognitive limitations" and opined that he could not perform his prior work as a sheet metal shop foreman. (*Id.*) Dr. Jewell added that "[j]obs that allow him to set his own pace, take breaks as needed, and are somewhat repetitive would be best." (*Id.*)

In explaining Garner's RFC, the ALJ summarized Dr. Jewell's report and acknowledged that he "noted slowing of fine motor speed." (Filing No. 8-2 at ECF p. 20.) Later, the ALJ revealed that he gave "some weight" to Dr. Jewell's evaluation. (*Id.* at ECF p. 24.) The ALJ explained that he accepted Dr. Jewell's opinion that Garner could only perform relatively simple work without demanding performance standards and with the flexibility to set his own pace

---

[1] Garner raised a second issue in his initial brief (*see* Filing No. 13 at ECF pp. 10–13), but he withdrew that argument in his reply brief (*see* Filing No. 19 at ECF p. 1).

4

and take breaks. (*Id.*) But the ALJ added that Garner's "relatively intact daily activities and successful return to part-time work demonstrates higher cognitive functional [sic] than indicated by Dr. Jewell." (*Id.*)

Ultimately, the ALJ found that Garner retained the capacity to perform light work as defined by 20 C.F.R. § 404.1567(b) but with some exceptions. (Filing No. 8-2 at ECF p. 19.) Notably, the ALJ found that Garner could only occasionally perform fine manipulations with his left hand, but he did not place a similar limitation on Garner's use of his right hand. (*Id.*) The ALJ also found that Garner would be limited to simple, routine, and repetitive tasks (like those he performed at the greenhouse) and that he could not perform work requiring a fast pace or strict production quotas. (*Id.*)

Dr. Janice Bending testified at Garner's hearing as a vocational expert (VE). (Filing No. 8-2 at ECF p. 50.) The VE testified that a person with Garner's RFC could work full time as an office helper, merchandise marker, or housekeeper. (*Id.* at ECF pp. 52–53.) The VE explained that these jobs would involve occasional or frequent fingering but only with one hand, so a person with Garner's abilities could perform them. (*Id.* at ECF pp. 53–55.) The VE also explained that, even in a position without the demands of a fast pace or strict production quotas, a worker could not remain employed if he worked so slowly that he produced less than a worker who was off task more than 10% of the time. (*Id.* at ECF pp. 56–57.)

Accepting the VE's testimony, the ALJ found that Garner's RFC would enable him to perform work available in significant numbers in the national

5

economy. (*Id.* at ECF pp. 25–26.)  Therefore, the ALJ found that Garner's disability had ended as of September 1, 2011, rendering him ineligible for benefits. (*Id.* at ECF p. 26.)

## II. Standard of Review

The Court must affirm the ALJ's decision unless it is unsupported by substantial evidence or based on a legal error.  *E.g.*, *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g).  The ALJ—not the Court—has discretion to weigh the evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility.  *Richardson v. Perales,* 402 U.S. 389, 399–400 (1971).  Accordingly, the Court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's.  *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999).

Even where the ALJ has based his decision on a legal error, the Court may not remand the action if the error was harmless.  *McKinzey v. Astrue,* 641 F.3d 884, 892 (7th Cir. 2011).  The harmless error standard does not allow the ALJ's decision to stand just because it is otherwise supported by substantial evidence.  *E.g.*, *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010).  Substantial-evidence review ensures that the Administration has fulfilled its statutory duty to "articulate reasoned grounds of decision."  *Spiva,* 628 F.3d at 353.  In contrast, review for legal errors "ensure[s] that the first-line tribunal is not making serious mistakes or omissions."  *Walters v. Astrue,* 444 F. App'x 913, 919 (7th Cir. 2011) (non-precedential order) (citing *Spiva,* 628 F.3d at 353).  Therefore, an error is harmless only if the Court determines "with great

confidence" that remand would be pointless because no reasonable trier of fact could reach a conclusion different from the ALJ's. McKinzey, 641 F.3d at 892; Sarchet v. Chater, 78 F.3d 305, 309 (7th Cir. 1996).

**III. Analysis**

Garner posits alternative arguments asserting error. First, Garner argues that Dr. Jewell's assessment of Garner's fine motor skills constitutes a medical opinion and that the ALJ erred by failing to evaluate that opinion. (Filing No. 13 at ECF pp. 7–10.) Alternatively, Garner argues that, even if Dr. Jewell's assessment of Garner's fine motor skills is not a medical opinion, the ALJ still was bound to address it in his opinion and erred by failing to do so. (Filing No. 19 at ECF pp. 2–3.) The Commissioner rejoins that Dr. Jewell's assessment of Garner's fine motor skills was not a medical opinion and that, in any event, the ALJ properly evaluated that assessment. (Filing No. 18 at ECF pp. 12–17.)

An ALJ must evaluate every medical opinion he receives. 20 C.F.R. § 404.1527(d). "Medical opinions are statements . . . that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [his] symptoms, diagnosis and prognosis, what [he] can still do despite impairment(s), and [his] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

I find that Dr. Jewell's assessment of Garner's fine motor skills qualifies as a medical opinion. Of course, this assessment conveys a series of observations: that Garner works slowly with his right hand, that he works

7

more slowly with his left hand, and that—nevertheless—Garner works considerably faster with his left hand than he did in the past. But, by characterizing Garner's fine motor functioning as "moderately slow with the right hand" and "extremely slow" but "improved considerably" with the left, Dr. Jewell also conveyed his judgment about the extent of Garner's limitations and what he can still do despite his limitations.

Even so, I find that the ALJ adequately evaluated Dr. Jewell's opinion. The ALJ expressly acknowledged it when explaining his RFC determination: "He also noted slowing of fine motor speed . . . ." ([Filing No. 8-2 at ECF p. 21](#).) The ALJ also addressed Dr. Jewell's recommendations that Garner be limited to work without demanding performance standards and allowing flexibility to set his own pace and take breaks. (*Id.* [at ECF p. 24](#).)

In fact, the ALJ incorporated Dr. Jewell's opinion into his RFC determination. True, the ALJ found that Garner could "occasionally finger" with his slower left hand and placed no express limitation on Garner's ability to finger with his right hand. (*Id.* [at ECF p. 19](#).) But the ALJ also found that Garner "cannot perform fast-paced work or work requiring strict production quotas." (*[Id.](#)*) Dr. Jewell did not recommend that Garner be limited to work that did not require significant or frequent fingering. Instead, he recommended that Garner be limited to work that would allow him to work slowly. ([Filing No. 8-14 at ECF p. 12](#).) I therefore read Dr. Jewell's report as suggesting that Garner's impaired fine motor skills should be accommodated by adjusting the pace of his work—not the amount or frequency of fine manipulations with

8

either hand.  The ALJ took a more generous approach by limiting Garner's production standards, pace of work, and frequency of fine manipulations with the left hand.  ([Filing No. 8-2 at ECF p. 19](Filing No. 8-2 at ECF p. 19).)

In short, I cannot find that the ALJ neglected or ignored Dr. Jewell's opinion concerning Garner's fine motor skills.  Instead, I find that he adequately assessed the opinion and credited it by incorporating it into his RFC determination.  A different ALJ might reasonably have drawn a greater limitation from Dr. Jewell's opinion, inferred that Garner lacked the manipulation skills to produce as much as an employee who is off task more than 10% of the time, and concluded that Garner remains disabled.  But I cannot reweigh the evidence.  See [*Butera*, 173 F.3d at 1055](Butera, 173 F.3d at 1055).  The Record depicts Garner as a hard-working man who still deals with a serious injury.  Based on the standard of review, however, I find no error in the ALJ's decision.

## IV. Conclusion

For the foregoing reasons, I recommend that the Court **AFFIRM** the ALJ's decision.  Any objections to this Report and Recommendation must be filed with the Clerk in accordance with [28 U.S.C. § 636(b)(1)](28 U.S.C. § 636(b)(1)).  Failure to file timely objections within 14 days after service will constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 20th day of June, 2014.

*/s/ William G. Hussmann, Jr.*
William G. Hussmann, Jr.
United States Magistrate Judge
Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**